26 C.C.P.A.(Patents)

### BARBA v. BRIZZOLARA.

Patent Appeal No. 4158.

Court of Customs and Patent Appeals.
June 5, 1939.

Geo. H. Strickland, of Dayton, Ohio (Spencer, Hardman & Fehr, Hugh Keneipp, of Washington, D. C., and R. R. Candor, of Dayton, Ohio, of counsel), for appellant.

Robert T. Palmer, of Boston, Mass., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is a patent interference proceeding wherein the Board of Appeals of the United States Patent Office reversed a decision of the Examiner of Interferences which awarded priority of invention of the subject matter of counts 2 and 3 of the interference to appellant. The board awarded priority of invention to appellee, and from its decision this appeal was taken.

Count 2 is illustrative and reads as follows: "2. In apparatus for the conditioning and ductless distribution of air, the combination with a railway car having a relatively long and narrow passenger compartment terminating short of the ends of the car, an air conditioning unit at each end of the car above the normal headroom of the car and external to the said passenger compartment, and means for establishing unconfined air currents moving in opposite directions along the opposite sides of and from end to end of the passenger compartment above the passenger space therein; said means comprising blowers for forcing air through the respective units, discharge means and a recirculated air inlet for each unit, the discharge means of the units being located at opposite ends of the passenger compartment adjacent opposite sides of the car and above the passenger space within the compartment, and the recirculated air inlet of each unit being substantially above the associated discharge means and at the opposite side of the car."

The subject matter of the involved invention is sufficiently described in said count.

The interference arises between an application of appellee filed April 13, 1933, and an application filed by appellant on July 28, 1933. Appellant is the junior party and the burden was upon him to establish priority of invention by a preponderance of evidence.

Originally three counts were involved. The Examiner of Interferences awarded priority of invention of the subject matter of count 1 to appellee; appellant took no appeal with respect to this count.

Counts 2 and 3 are distinguished from count 1 in that they describe the location of the air conditioning units above the normal head room of the car, while count 1 does not.

Both parties rely upon the same reduction to practice, and the issue is one of

originality; independent conceptions of the invention by the respective parties are not involved.

Both parties took testimony. It appears that prior to September, 1931, the Metropolitan Ice Company of Boston was engaged in the development of air conditioning apparatus; that said company agreed to cooperate with the Boston & Maine Railroad in the installation of such apparatus in passenger coaches; that in September, 1931, there was installed and tested in one of the passenger coaches of said railroad an air conditioning apparatus responding to the counts here in issue; that appellant was a mechanical engineer in the employ of said railroad, whose special duties related to the design and equipment of cars—both passenger and freight; and that appellee is a refrigeration and air conditioning engineer who was retained by the Metropolitan Ice Company to devise and perfect air conditioning systems.

Appellee and appellant cooperated in the installation of the apparatus in said passenger car, and appellant devised the particular location of the same in the upper part thereof.

Inasmuch as the real controversy before us relates to the conception of the installation of the apparatus "above the normal headroom of the car and external to the said passenger compartment," as set forth in count 2, we shall confine ourselves to a discussion of that question. The Examiner of Interferences in his decision upon a motion for reconsideration of his original decision held that, while appellee probably first had the idea that the apparatus should be located above the normal head room of the car, this did not constitute conception because he did not have in mind the idea of the means by which this could be accomplished, and that the idea of such means emanated from appellant rather than from appellee.

In his original decision the Examiner of Interferences stated:

"* * * Neither party, by his record, was able to establish a clear conception of the invention in issue prior to the exchange of ideas in May, 1931. Because of the originality feature of this case, priority must be found through the consideration of the surrounding circumstances.

    *    *    *    *    *    *

"Based upon the disclosure in Barba exhibit 10, which originated with Brizzolara, and upon the fact as brought out by Brizzolara in his testimony * * * that he is a refrigerating and air conditioning engineer of several years' experience, whereas Barba is a railway equipment designer with little or no experience with refrigerating and air conditioning machinery * * *, it is the conclusion of the examiner of interferences that Brizzolara is the most probable inventor of the apparatus defined by count 1 because this count covers the apparatus irrespective of its located in the car.

"Barba exhibit 13 is a drawing dated June 27, 1931 made under the direction of Barba and explained by him in Q's. and A's. 69-74, pp. 13, 14, Barba record. As indicated by Barba in his testimony, the drawing exhibit 13 shows the air conditioning unit in the clear story space of the passenger car above the normal head room of the passenger and answers the specific limitations contained in counts 2 and 3.

"Because of the fact that Barba was a railway equipment designer, as brought out by his testimony, it is considered that Barba was most likely the inventor of the invention defined by counts 2 and 3, since the specific limitations of these counts cover problems of design in accommodating equipment within the car, rather than Brizzolara who had previously confined his activities to the air conditioning of buildings where available space was of minor importance."

The Examiner of Interferences apparently lost sight of the fact that the burden was upon appellant to establish priority by a preponderance of evidence, and his original decision seems to have been based wholly upon what he considered probabilities arising from the respective occupations of the parties.

The Board of Appeals in its decision, after referring to certain evidence hereinafter discussed, stated:

"The Examiner of Interferences did not regard the above testimony as establishing that Brizzolara had any clear conception of means for placing the air cooling units above the normal headroom of a car and consequently could not have imparted any information of it to Barba.

"It seems to us that the testimony is sufficient to show that Brizzolara had a complete conception of locating the cooling equipment above the normal headroom of the car. The fact that he discussed lowering the ceiling in the toilet room in order to provide space indicates that he con-

templated such location of the cooling equipment. The mere thought of locating the equipment at this point by lowering the ceiling necessarily carries with it that some support was to be used. He discussed this location with Barba and without doubt Barba thereby obtained information from Brizzolara concerning it. It is our view, therefore, that Brizzolara was the inventor of the invention defined by counts 2 and 3."

It appears from the evidence that it was the original thought to place the involved apparatus in a dining car of the Boston & Maine Railroad instead of in a passenger car.

There is in evidence appellee's Exhibit 1, a letter dated March 21, 1931, from appellee to the Metropolitan Ice Company, "Att'n. Mr. J. Clark Bennett," from which we quote:

"Will you be good enough to arrange an appointment with Mr. Jangro of the Boston & Maine R. R. for Mr. Gundlach to go up to the Boston & Maine shops and measure up the space available overhead in the dining car vestibul*t*es?

\* \* \* \* \* \*

"If this space overhead is not available or of sufficient size, it will be necessary to use one of the lockers extending from the floor to the ceiling in which we will install the cooling equipment."

Mr. Bennett, Assistant Treasurer of the Metropolitan Ice Company, referred to in said exhibit, testified that, in accordance with appellee's suggestion, he, together with Mr. Jangro and a Mr. Woodlyn, measured the overhead space in one of the new dining cars of the Boston & Maine Railroad. He further testified as follows:

"Q. 10. The letter Brizzolara Exhibit 1 refers to the space available in the dining car vestibules. Do you remember the particular dining cars referred to? A. Yes, they were the new dining cars; I think they called them the Colonial type, they had just put in use on the Minute Man. They were brand new cars. That was one reason we shifted from the dining car because they didn't want to spoil the very artistic effect they had, and they didn't want to take them out of service.

"Q. 11. Do you remember just what Mr. Brizzolara referred to when he spoke of measuring space overhead in the dining car? A. Yes. I went over with Mr. Jangro and Mr. Woodlyn and we measured up the space in the vestibule at either end of the car in back of the partition that marks off the dining space. I think they had a little archway, they sometimes have, with the idea of keeping the equipment up there and getting the air flow from the top back and forth across that.

"Q. 12. When you speak of the equipment, what equipment did you refer to? A. The cooling part of the equipment, the surface and blower.

"Q. 13. How far overhead did you measure? A. I can't remember the exact detail.

"Q. 14. Do you mean in the clear story space or above the passenger space? A. It was all above the passengers, yes. The whole idea was to keep the air circulation above the passengers' heads and there was available space above the necessary head room for a person to pass through."

Upon the witness being asked why the involved apparatus was not installed in any of the new dining cars, he replied as follows: "\* \* \* As I said before, they didn't want to change the cars, to spoil the effect, it would be very expensive to change any of the decorative work in the cars and also they didn't want to take them out of service. They had spent a great deal of money recently on them and they were advertising them."

Appellant testified that prior to May 20, 1931, he visited the office of the Metropolitan Ice Company at Cambridge to inspect a temporary air conditioning system which said company had developed, and that Mr. Bennett was present. He further stated: "\* \* \* Sufficient information was obtained at this time, together with additional information which Mr. Bennett expected to provide the Mechanical Engineer's office for the development of an air conditioning system based upon the principles which they had perfected where ice was used as the refrigerant."

The witness made a sketch of the system which he saw at that time, and testified that the cooling box was against the ceiling in the conference room of the company. A letter written by appellant, and introduced in evidence as appellant's Exhibit 4, contains the following: "System— The system of air conditioning, as recommended by the Metropolitan Ice Co., consists of having an ice box of a size sufficient to provide iced water, for a circulating system, through the medium of pipes

in a compartment as previously described, having approximately 70 feet of fin pipe placed in said compartment, and by the application of a suction fan the air will enter this compartment from the outside, and be drawn over the fin pipes, which have been cooled by the circulating ice water, so as to emit into the passenger compartment cooled air; and by the application of a second compartment in opposite diagonal corner, with the application of another suction fan, this air will travel in the upper strata of the cross section of the car, and due to its temperature the air will fall and warm air will rise into the other compartment, from which point it will again be circulated back in the upper clear story to the cooling compartment, or tower, where it is again cooled and recirculated."

In a letter written by appellee on May 21, 1931, to Mr. Bennett, appellee's Exhibit 4, appellee made two suggestions with respect to the location of the air conditioning apparatus in the car, one of which reads as follows: "* * * Other possibility is to drop the ceiling in the toilet room and use the space above for our equipment. If these fin automobile radiators work out we can crowd in a tremendous amount of surface in a small space."

Appellee's testimony with respect to the statement above quoted was as follows:

"Q. 32. * * * Was the air conditioning apparatus in the Boston & Maine car installed above the ceiling in the toilet rooms? A. It was not in the final car built for the Boston & Maine Railroad. The cooling units were not installed above the toilet room.

"Q. 33. Where were they installed? A. They were installed adjacent to the toilet room, and the reason why the toilet room space was not utilized was because Mr. Barba had informed us of various water supplies located in that space, various tanks, for soaps, some control devices, the removal of which would occasion great inconvenience."

This would clearly indicate that the matter of the location of the apparatus over the toilet room space had been suggested to appellant by appellee, either orally or in writing, and that appellant had called appellee's attention to objections to the location proposed.

Upon consideration of all of the evidence in the case, we are convinced that appellee had a complete conception of locating the cooling equipment above the normal head room of the car, and that such conception was conveyed to appellant.

We are not impressed with appellant's contention that, in order for appellee to prevail, he must have established not only the conception of the placing of the apparatus above the normal head room of the car, but that he must also have had definitely in mind, at the same time, a particular means thereafter adopted for so placing it. It is not contended that the particular means finally adopted constituted invention, nor is such particular means set forth in the involved counts. It appears that appellee contemplated using the space in a dining car above the vestibules, and also the space above the toilet room by dropping the ceiling thereof. It is not established that this could not be done, or that the objections thereto were insuperable. Under the counts it was not necessary for appellee to have employed the particular means which finally were adopted. The particular means to carry out appellee's conception, we think, could be worked out by one skilled in the art without the exercise of invention.

Moreover, it appears from the evidence that the idea of placing air cooling apparatus above the normal head room of the car did not originate with either appellee or appellant, but had been used on a Baltimore & Ohio car. While in the case at bar this element is a material limitation and may not be ignored, the fact that it was prior art may be considered in determining whether the evidence in behalf of appellee upon this point establishes a complete conception upon his part of the element of the count here under consideration.

In the case of Brand v. Thomas, 25 C.C.P.A., Patents, 1053, 96 F.2d 301, 303, we said: "Unquestionably it is the law that an applicant for a patent sufficiently discloses his invention if one skilled in the art follows his teachings and produces the device in operative form without the exercise of invention. If in producing the device he makes it operative by adding additional features, old in the art, the addition of which does not amount to invention, it may be said that he has done nothing more than to follow the teachings disclosed. This principle is supported by Cooper v. Downing, supra [45 App.D.C. 345], and numerous other cases not necessary to cite here."

In the case of Townsend v. Smith, 17 C.C.P.A., Patents, 647, 36 F.2d 292, 295, we said: "* * * A priority of conception is established when the invention is made sufficiently plain to enable those skilled in the art to understand it."

Neither are we impressed with appellant's contention that the evidence does not establish that appellee had conceived the entire invention involved in the counts when he conceived that the air conditioning apparatus should be placed above the normal head room of the car. It was sufficient if he had that conception at the time he conceived the other elements of the invention disclosed in count 1. Inasmuch as it is conceded that appellee was properly awarded priority with respect to count 1, and as it is established that appellee had conceived the element of the counts respecting the location of the apparatus above the normal head room of the car, long prior to any date established by appellant when he was in possession of the idea of so placing the apparatus, it follows that appellee must be held to be the first inventor of the subject matter of counts 2 and 3, as well as of count 1.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.